[Cite as *State v. Walz*, 2012-Ohio-4627.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                 :

    Plaintiff-Appellee                    :              C.A. CASE NO.    23783

v.                                            :              T.C. NO.    09CR1959

GREGORY L. WALZ                               :              (Criminal appeal from
                                                             Common Pleas Court)

    Defendant-Appellant                   :

                                              :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the ____5th____ day of ____October____, 2012.

. . . . . . . . . .

JOHNNA M. SHIA, Atty. Reg. No. 0067685, Assistant Prosecuting Attorney, 301 W. Third
Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek,
Ohio 45434
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}     On June 25, 2009, defendant-appellant Gregory L. Walz was indicted on two

counts of felonious assault, in violation of R.C. 2903.11(A)(1), both felonies of the first degree; one count of vandalism, in violation of R.C. 2909.05(B)(1)(a), a felony of the fifth degree; and one count of failure to comply with an order or signal of a police officer, in violation of R.C. 2921.331(B) and (C)(5), a felony of the third degree. On June 30, 2009, Walz entered pleas of not guilty to all counts. On October 23, 2009, Walz changed his pleas to guilty as to all counts. On November 5, 2009, Walz filed a notice of substitution of counsel along with a motion to vacate his plea and a request for a hearing. In the motion to vacate, Walz asserted that he relied on counsel's advice in entering his guilty pleas and that counsel failed to fully disclose the consequences of his decision.

{¶ 2}     On December 3, 2009, a hearing was held on Walz's motion to vacate. The matter was continued for further hearing on December 9, 2009 on the issue of whether Walz's belief in his innocence was relevant to his request to withdraw his guilty plea. On December 11, 2009, the trial court overruled Walz's motion to vacate. The trial court subsequently sentenced Walz to seven years imprisonment for one of the felonious assault convictions and 12 months for the vandalism conviction, to be served concurrently, as well as 12 months for the failure to comply conviction, to be served consecutively with the first two convictions. The two felonious assault convictions were merged for purposes of sentencing.

{¶ 3}     Walz filed a timely notice of appeal with this Court on December 14, 2009. On appeal, Walz argued that his guilty plea was not made in a knowing and intelligent fashion because he received ineffective assistance of counsel at the trial level. Walz also argued that the trial court erred in denying his motion to vacate. On March 18, 2011, we

issued an opinion affirming the judgment of the trial court. *State v. Walz*, 2d Dist. Montgomery No. 23783, 2011-Ohio-1270 (hereinafter referred to as "*Walz I*").

{¶ 4}  On June 16, 2011, Walz filed an application for the reopening of his appeal pursuant to App. R. 26(B).  We granted Walz's application to reopen in an opinion issued on December 19, 2011.  In our opinion, we limited Walz's appeal to the issues he raised in his application for reopening: to wit, 1) the failure of his appellate counsel to argue that his pleas were either void or were not entered knowingly, voluntarily, and intelligently because the trial court failed to inform him that he faced a mandatory driver's license suspension of three years to life; 2) failure of appellate counsel to challenge the trial court's disapproval of intensive program prison (IPP) or shock incarceration in its sentencing entry without addressing these issues at the sentencing hearing or making findings to support disapproval; and 3) by prematurely disapproving his placement in transitional control for the final six months of his imprisonment.  For the following reasons, we reverse in part and sustain in part the judgment of the trial court.

{¶ 5}  Walz's first assignment of error is as follows:

{¶ 6}  "GREGORY L. WALZ WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS BECAUSE HIS GUILTY PLEAS WERE NOT ENTERED KNOWINGLY, INTELLIGENTLY, AND VOLUNTARILY."

{¶ 7}  In his first assignment, Walz argues that the trial court erred to his prejudice when it failed to inform him at the plea hearing that he faced a mandatory three year to lifetime driver's license suspension on Counts II and IV, felonious assault (deadly weapon)

and failure to comply, respectively. Thus, Walz asserts that his guilty pleas to those two counts was not knowingly, voluntarily, or intelligently made and therefore, should be vacated.

{¶ 8} Crim. R. 11(C) sets forth the requisite notice to be given to a defendant at a plea hearing on a felony. To be fully informed of the effect of the plea, the court must determine that the defendant's plea was made with an "understanding of the nature of the charges and the maximum penalty involved." Crim. R. 11(C)(2)(a).

{¶ 9} In order for a plea to be given knowingly and voluntarily, the trial court must follow the mandates of Crim. R. 11(C). If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and is void. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

{¶ 10} A trial court must strictly comply with Crim. R. 11 as it pertains to the waiver of federal constitutional rights. These include the right to trial by jury, the right of confrontation, and the privilege against self-incrimination. *Id*. at 243-44. However, substantial compliance with Crim. R. 11(C) is sufficient when waiving non-constitutional rights. *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). The non-constitutional rights that a defendant must be informed of are the nature of the charges with an understanding of the law in relation to the facts, the maximum penalty, and that after entering a guilty plea or a no contest plea, the court may proceed to judgment and sentence. Crim. R. 11(C)(2)(a)(b); *State v. Philpott*, 8th Dist. Cuyahoga No. 74392, 2000 WL 1867395 (Dec. 14, 2000), citing *McCarthy v. U.S.*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). Substantial compliance means that under the totality of the circumstances, the

defendant subjectively understands the implications of his plea and the rights he is waiving. *Nero*, 56 Ohio St.3d at 108.

{¶ 11} A defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. *State v, Stewart*, 51 Ohio St.2d 86, 93, 364 N.E.2d 1163, 1167 (1977); Crim. R. 52(A). The test is whether the plea would have been otherwise made. *Id*. at 108.

{¶ 12} Upon review of the colloquy between the trial court and Walz, we conclude that the court did not substantially comply with the requirements set forth in Crim. R. 11(C). Based on the nature of his offenses in Counts II and IV, Walz was subject to a mandatory suspension of his driver's license ranging from a minimum of three years to a maximum lifetime suspension pursuant to R.C. 2903.11(D)(2) and 2921.331(E). The record of the plea hearing establishes that at no time was Walz orally advised by the trial court that his license was subject to a mandatory suspension ranging from three years to the remainder of his life.

{¶ 13} We note that the plea form for Count II, felonious assault (deadly weapon), did not mention that Walz was subject to a mandatory license suspension. Thus, in regards to Count II, he was neither apprised orally nor pursuant to the plea form that he faced a mandatory license suspension lasting a minimum of three years to a lifetime maximum. In *State v. Greene*, 2d Dist. Greene No. 2005 CA 26, 2006-Ohio-480, we found that the defendant was prejudiced by the trial court's failure to inform him orally or in writing that he would receive a mandatory license suspension "of at least three years and as long as his natural life." *Id*. at ¶12. "It is reasonable to conclude that Greene would not have pled

guilty had he been aware that he could receive a lifetime driving suspension." *Id*. Thus, we held that Greene's guilty plea was not rendered in a knowing and intelligent manner, and was therefore, vacated.

{¶ 14} In the instant case, the trial court failed to inform Walz of the mandatory driver's license suspension orally at the plea hearing or in the plea form with respect to Count II. The trial court's failure in this regard prejudiced Walz to the extent that his plea was rendered in less than a knowing, intelligent, and voluntary manner, thus requiring that his conviction in Count II be reversed.

{¶ 15} The plea form for Count IV, failure to comply, *did*, however, state that Walz was subject to a mandatory suspension of his driver's license ranging from a minimum of three years to a maximum lifetime suspension. Generally, we have held that "a trial court speaks only through its journal entries." *State v. Hatfield*, 2d Dist. Champaign No. 2006 CA 16, 2006-Ohio-7090. Therefore, because Walz was informed in the plea form which he signed for Count IV that he was facing a mandatory license suspension, it follows that he was ostensibly on notice of the impending suspension and he could not later claim that he was unaware for the purposes of a motion to vacate his plea for that charge.

{¶ 16} During the following exchange at the plea hearing, the trial court orally informed Walz of all of the penalties he would be subject to as a result of his guilty plea to Count IV:

> The Court: All right. Finally, as to failure to comply,
>
> that is a felony of the third degree, which means that
>
> the potential prison term can be anywhere from one year

to five years.   Do you understand that?

Walz: Yes, sir.

Q: And also that as that – as it relates to any prison term to be imposed for that felony [sic] to comply, it must be – that prison term must be served in a consecutive fashion to any other prison term.   Do you understand that?

A: Yes, sir.

Q: And by consecutive, that means you would serve the first prison term and then this prison term would be a prison term that you would serve after the initial prison term has been served for the other charges.   Do you understand that?

A: Yes, sir.

Q: As opposed to what's called a concurrent sentence, where you would serve the sentences together.   Do you understand that?

A: Yes, sir.

Q: All right.   As to the failure to comply, there's also a potential fine, but the fine cannot exceed $10,000.00.   Do you understand that, sir?

A: Yes, sir.

Q: All right.   Now, as I've said, *those are all of the potential*

*penalties*. \*\*\*

{¶ 17}  The trial court went on to explain restitution and post-release control to Walz, but never discussed the mandatory license suspension.  In fact, after informing Walz he was subject to a potential fine of $10,000.00 for failure to comply, the trial court stated that "those are all of the potential penalties" without mentioning the mandatory license suspension.  This statement directly contradicts the section of the plea form which informed Walz that he faced a mandatory license suspension ranging from three years to a lifetime suspension.  When material misinformation about a consequence of a guilty plea is conveyed to a defendant, and the court by its silence fails to correct the mistake, the failure renders the plea less than knowing, intelligent, and voluntary.  *State v. Engle*, 74 Ohio St.3d 525, 660 N.E.2d 450 (1996).  The trial court provided Walz misinformation when it advised him that "those are all of the penalties." In fact, they were not all of the penalties.  The fact that the plea form for Count IV contained the correct information only served further to render the plea less than knowing and involuntary because it directly contradicted the oral information Walz was provided by the trial court.  Thus, Walz's conviction on Count IV is reversed.

{¶ 18}  Lastly, we note that the Ohio Supreme Court has recently issued an opinion which found that a mandatory driver's license suspension is a statutorily mandated term. *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, at ¶ 15.  The Supreme Court held that a trial court's failure to include this term in a criminal sentence renders the sentence void in part. *Id*.  Further, a mandatory driver's license suspension constitutes a criminal sanction, requiring re-sentencing of the offender which is limited to

imposition of the mandatory driver's license suspension. *Id*. Unlike the instant case, however, the defendant in *Harris* did not enter a plea; rather he pursued a trial and was convicted by a jury. *Id*. Thereafter, the sentencing judge failed to include the statutorily mandated license suspension in his judgment of conviction. In the instant case, the trial court failed to properly inform Walz of the mandatory driver's license suspension prior to the entering of his guilty pleas, thus rendering the Crim. R. 11(C) plea colloquy deficient.

{¶ 19} Walz's first assignment of error is sustained. Walz's convictions for Counts II and IV only are hereby reversed. These two counts are remanded for further proceedings.

{¶ 20} Because they are interrelated, Walz's second and third assignments of error will be discussed together as follows:

{¶ 21} "THE TRIAL COURT ERRED WHEN IT DENIED IPP AND SHOCK INCARCERATION IN ITS SENTENCING ENTRY."

{¶ 22} "THE TRIAL COURT ERRED WHEN IT DISAPPROVED OF WALZ'S TRANSFER TO TRANSITIONAL CONTROL IN ITS SENTENCING ENTRY."

{¶ 23} In his second assignment, Walz argues that the trial court erred when it disapproved of his  placement in a shock incarceration program and intensive prison program in the judgment entry without first making specific findings required by R.C. 2929.14.

{¶ 24} R.C. 2929.19(D) provides that:

The sentencing court, pursuant to division (K) of section

2929.14 of the Revised Code, may recommend placement of the offender in a program of shock incarceration under section 5120.031 of the Revised Code or an intensive program prison under section 5120.032 of the Revised Code, disapprove placement of the offender in a program or prison of that nature, or make no recommendation. If the court recommends or disapproves placement, it shall make a finding that gives its reasons for its recommendation or disapproval.

{¶ 25} In *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, (2d Dist.), we held that a trial court errs when it disapproves of shock incarceration or intensive program prison without making certain findings required by R.C. 2929.14. We also held that it is premature for a trial court, at sentencing, to disapprove transitional control.

{¶ 26} However, with respect to the trial court's error in having disapproved of shock incarceration and intensive program prison in this case, this error is necessarily harmless, because Walz, as a first-degree felon, is not eligible for either program. R.C. 5120.031(A)(4) and R.C. 5120.032(B)(2)(a). See also *State v. Porcher*, 2d Dist. Montgomery No. 24058, 2011-Ohio-5976; *State v. Griffie*, 2d Dist. Montgomery No. 24102, 2011-Ohio-6704; *State v. DeWitt*, 2d Dist. Montgomery No. 24437, 2012-Ohio-635.

{¶ 27} Lastly, we note that the trial court erred in prematurely disapproving Walz

for transitional control in the judgment entry of conviction. This error, however, can be cured by remanding Counts I and III to the trial court for the limited purpose of amending the judgment entry of conviction to delete the disapproval of Walz for transitional control. See *State v. DeWitt*, 2012-Ohio-635.

{¶ 28} Walz's second assignment is overruled as harmless error. Walz's third assignment is sustained.

{¶ 29} Walz's first and third assignments of error having been sustained, this matter is remanded to the trial court for proceedings consistent with this opinion.

. . . . . . . . . .

GRADY, P.J., concurs.

HALL, J., concurring:

{¶ 30} I agree that the trial court's denial of the defendant's participation in either Intensive Program Prison or Shock Incarceration is harmless error because the defendant, serving a mandatory sentence for a first-degree felony, is not eligible for either program. Nevertheless, I previously have questioned whether the statutory requirement that the trial court make a "finding" of the reasons for denial of these programs is constitutional in light of cases holding other aspects of judicial fact finding are unconstitutional. See *State v. Allender*, 2d Dist. Montgomery No. 24864, 2012 -Ohio- 2963, ¶30 n. 2 (Hall, J., dissenting). I also agree we previously have held that it is premature to deny transitional control at sentencing. *Howard*, supra. Accordingly, this case should be reversed for the trial court to correct its judgment entry of conviction with regard to both of those matters.

{¶ 31} The failure to inform the defendant of a mandatory driver's license

suspension for the Felonious Assault (Police Officer) (Deadly Weapon-Motor Vehicle) and the written-only admonition of a mandatory driver's license suspension for the Failure to Comply with an Order or Signal of a Police Officer creates a thornier problem. My analysis begins with the posture of this appeal. This is a reopened appeal, pursuant to App. R. 26(B), to raise ineffective assistance of appellate counsel. The original appeal was from the trial court's Judgment Entry of Conviction and Sentencing, filed December 11, 2009. There, the defendant was sentenced to seven years in prison for the Felonious Assault consecutive to one year in prison for the Failure to Comply, concurrent with twelve months in prison for the Vandalism charge, for a total of eight years' imprisonment. No driver's license suspension was imposed even though the Felonious Assault (with an automobile as the deadly weapon) carried a mandatory Class II suspension under R.C. 2903.11(D)(2), and the Failure to Comply carried a mandatory Class II suspension under R.C. 2921.331(E) of three years to life pursuant to R.C. 4510.02 (A)(2). We affirmed the judgment on direct appeal. No one raised the lack of license suspensions at the plea colloquy or elsewhere at the trial court level even though there was a pre-sentence motion to vacate the plea on the grounds that the defendant did not understand the consequences of his pleas, and a full evidentiary hearing was conducted. No one raised the lack of suspensions in the Judgment of Conviction and Sentence in the direct appeal.

{¶ 32} To establish ineffective assistance of appellate counsel, the appellant would have the burden of establishing that his appellate counsel's representation fell below an objectively reasonable standard of representation by failing to raise the issue he now presents and that, as a result, he was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.

2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Here the question is whether it was sound professional strategy for appellate counsel not to raise the fact that missing from the defendant's sentence was any driver's license suspension whatsoever. Normally, I would agree that it is a reasonable strategy to "let a sleeping dog lie." With the continuing passage of time, the likelihood that Mr. Walz ever would have suffered a driver's license suspension waned.[1] But in the unique circumstances of this original appeal, Walz's only two assignments of error sought to vacate his plea on the basis that it was not voluntarily made. I perceive no better way appellate counsel could have achieved that same goal than to raise the lack of advice about the driver's license suspensions, which, in turn, would undoubtedly result in the plea being vacated and the case being remanded for further proceedings. Thus, in this case, appellate counsel's failure to raise the lack of driver's license suspensions constitutes ineffective assistance, and the defendant has been prejudiced by not having his plea vacated. For these reasons, I agree that Walz's convictions in Count II and IV should be reversed and remanded.

. . . . . . . . . .

---

[1] I note that by purported nunc pro tunc entry filed June 4, 2012, presumably in response to the assignment of error raised in this reopened appeal, and in response to the Ohio Supreme Court case of *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, decided May 3, 2012, the trial court imposed a single three-year driver's license suspension. However, the Felonious Assault and Failure to Comply convictions carry a mandatory suspension. The suspension purportedly imposed on June 4, 2012, if effective, would expire in December 2012, almost five years before Walz is released from prison. I don't see how the lack of a driver's license while in prison is prejudicial.

Copies mailed to:

Johnna M. Shia
Robert Alan Brenner
Hon. Michael L. Tucker